VAUGHAN S. WINBORNE, JR., PLAINTIFF v. MICHAEL F. EASLEY, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, COLON WILLOUGHBY, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR THE 10TH PROSECUTORIAL DISTRICT, AND NORTH CAROLINA STATE BOARD OF ELECTIONS, DEFENDANTS

No. COA98-1523

(Filed 21 December 1999)

**1. Elections— limitation on fund-raising during legislative sessions**

The trial court did not err in addressing the issue of whether part of N.C.G.S. § 163-278.13B (a)(2), the definition of "limited contributee" in a statute addressing limitations on fund-raising during legislative sessions, was unconstitutional even though plaintiff raised the constitutionality of the statute as it applied to challengers and to political committees desiring to contribute to challengers, because that issue was also properly before the court since plaintiff was seeking a means to obtain contributions from lobbyists and their political committees during the legislative session.

2. **Elections— limitation on fund-raising during legislative sessions—compelling governmental interest—not narrowly tailored**

The trial court did not err in finding N.C.G.S. § 163-278.13B (a)(2), the definition of "limited contributee" in a statute addressing limitations on fund-raising during legislative sessions, to be unconstitutional as applied to independent political committees accepting contributions on behalf of candidates because although the statute was enacted for the compelling governmental interest of preventing corruption or the appearance of corruption among both incumbents and challengers while the General Assembly is in session, the statute was not narrowly tailored to serve a compelling governmental interest.

3. **Elections— limitation on fund-raising during legislative sessions—compelling governmental interest—narrowly tailored**

The trial court did not err in finding that N.C.G.S. § 163-278.13B, a limitation on fund-raising during legislative sessions, was constitutional as applied to plaintiff candidate for the General Assembly as a challenger because: (1) a compelling governmental interest was addressed in amending the statute to include challengers; (2) the statute is narrowly tailored in its application to challengers, as well as incumbents; and (3) plaintiff has made no showing that the statute invidiously discriminates against him as a challenger.

Appeal by defendants from an order entered 7 October 1998 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 23 September 1999.

*White & Associates, by J. David Stradley, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorneys General Susan K. Nichols, Alexander McC. Peters, and James Peeler Smith, for defendants-appellants.*

*Deborah K. Ross and Mebane Rash Whitman for amicus curiae American Civil Liberties Union of North Carolina Legal Foundation, Inc.*

WALKER, Judge.

On 2 October 1998, plaintiff filed this action seeking to enjoin defendants from enforcing N.C. Gen. Stat. § 163-278.13B on the

WINBORNE v. EASLEY

[136 N.C. App. 191 (1999)]

ground that the statute unconstitutionally infringed upon his freedom of speech under the First and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff asserted that the statute was unconstitutional as applied to him as a non-incumbent candidate for the General Assembly and as to political action committees desiring to contribute to non-incumbent candidates.

Plaintiff's motion for preliminary injunction, along with defendants' motion to dismiss, was heard on 5 October 1998. Since supporting affidavits and witness testimony were offered by the parties during this hearing, the trial court converted, at defendants' request, the defendants' motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. On 7 October 1998, after making findings and conclusions, the trial court held that while N.C. Gen. Stat. § 163-278.13B furthered a compelling governmental interest, it was not narrowly tailored to that interest and was unconstitutional. The trial court then entered a declaratory judgment granting partial summary judgment to each party.

Plaintiff's allegations in his complaint included the following:

9. Plaintiff Winborne was unopposed of the Democratic nomination for N.C. House District 92 seat, and on May 6, 1998, Mr. Winborne became the Democratic nominee for said seat.

. . .

11. Since January, 1998, Plaintiff Winborne has actively campaigned for the District 92 N.C. House seat.

12. The general election will take place on November 3, 1998.

. . .

14. Section 163-278.13B prohibits political action committees from making contributions to members of, or candidates for, the General Assembly or Council of State while the General Assembly is in session. Additionally, the section prohibits members of, or candidates for, the General Assembly from receiving or soliciting contributions from political action committees while the General Assembly is in session.

15. The General Assembly convened on May 11, 1998 and continues in session.

16. According to widely publicized reports, leaders of the General Assembly have stated that the Assembly may not adjourn until after the general election.

17. Currently, the general election is approximately 5 weeks away.

. . .

23. On account of the threat of enforcement of N.C. Gen. Stat. § 163-278.13B, Plaintiff Winborne has been, and continues to be, deprived of contributions to his campaign.

24. On account of the threat of N.C. Gen. Stat. § 163-278.13B, Plaintiff SEANC has been, and continues to be, deprived of the opportunity to contribute to campaigns of candidates for the General Assembly.

N.C. Gen. Stat. § 163-278.13B(b) and (c), which became effective on 1 January 1998, limits fund-raising during the legislative session, and provides:

(b) Prohibited Solicitations.—While the General Assembly is in regular session, no limited contributee . . . shall: (1) Solicit a contribution from a limited contributor to be made to that limited contributee or to be made to any other candidate, officeholder, or political committee; . . . .

(c) Prohibited Contributions.—While the General Assembly is in regular session: (1) No limited contributor shall make or offer to make a contribution to a limited contributee. . . . (4) No limited contributee shall accept a contribution from a limited contributor.

N.C. Gen. Stat. § 163-278.13B(b) and (c) (Cum. Supp. 1998). "Limited contributor" is defined as:

a lobbyist registered pursuant to Article 9A of Chapter 120 of the General Statutes, that lobbyist's agent, or a political committee that employs or contracts with or who parent entity employs or contracts with a lobbyist registered pursuant to Article 9A of Chapter 120 of the General Statutes.

N.C. Gen. Stat. § 163-278.13B(a)(1) (Cum. Supp. 1998). "Limited Contributee" is defined as:

a member of or candidate for the Council of State, a member of or candidate for the General Assembly, or a political committee the purpose of which is to assist a member or members of or candidate or candidates for the Council of State or General Assembly.

N.C. Gen. Stat. § 163-278.13B(a)(2) (Cum. Supp. 1998).

In its order, the trial court's findings can be summarized as follows: (1) The statute was passed to prevent corruption or the appearance of corruption among both incumbent and non-incumbent legislative candidates. (2) The General Assembly, in adopting the statute, recognized that one of its legislators could be wrongfully influenced by money given directly to him or her during the session or by a lobbyist's threat to give money to a challenger if the incumbent fails to support a program sought by the lobbyist. (3) The prevention of corruption or the appearance of corruption is sufficient to justify some limitation on campaign contributions and thus the free speech protected thereunder by the First and Fourteenth Amendments. The underlying justification for the "in session" prohibition is that lobbyists and their related political committees should not affect or appear to affect ongoing legislation by directly contributing to or receiving solicitations from lawmakers or by threatening contributions to non-incumbent candidates. (4) The statute is overly broad since it is only the "direct" solicitation, contribution, pledge, or threat to contribute that results in the appearance of corruption. The prohibitions relating to the political committees for individual candidates or groups of candidates, which are registered with and regulated by the State Board of Elections, constituted an impermissible restriction on political free speech. (5) That portion of the "limited contributee" definition which pertains to a political committee established to assist an incumbent or challenger for the General Assembly is overly broad and invalid since it imposes a too rigid restriction on political free speech in violation of the First and Fourteenth Amendments to the United States Constitution. This does not, however, invalidate the remainder of the statute in question since the offending language can be severed. With the removal of political committees from the definition of "limited contributee," the remainder of the statute would meet constitutional muster.

After making these findings, the trial court concluded:

N.C. Gen. Stat. § 163-278.13B was enacted by the General Assembly in furtherance of a valid and compelling governmental

interest—the prevention of corruption and the appearance of corruption and impropriety while the General Assembly is engaged in the business of the people of the State of North Carolina. However, the prohibition imposed by N.C. Gen. Stat. § 163-278.13B, which bans solicitation and contributions by lobbyists and their related political committees to independent committees to elect candidates, incumbent or challenger, is overly broad and invalid in that it imposes a too rigid restraint and restriction on political free speech under the First and Fourteenth Amendments to the United States Constitution. With this particular part removed, the remainder of N.C. Gen. Stat. § 163-278.13B is valid, lawful and remains in effect.

Finally, the trial court entered a declaratory judgment which holds:

a. That N.C.G.S. 163-278.13B was enacted for a compelling governmental purpose to wit: to protect the State and the Legislative Branch of Government from actual corruption or the appearance of corruption or impropriety while the General Assembly is in session.

b. That the portion of N.C.G.S. 163-278.13B(a)(2) "Limited Contributee" which provides that a Limited Contributee means **"a political committee the purpose of which is to assist a member or members of or candidate or candidates for the Council of State or General Assembly"** is overly broad and invalid in that it imposes a too rigid restriction on political free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

c. That the remaining portion of N.C.G.S. 163-278.13B(a)(2) is a valid and appropriate restriction on political contributions and enacted to achieve a compelling governmental interest, . . . and does not violate political free speech secured under the First and Fourteenth Amendments to the United States Constitution.

d. That N.C.G.S. 163-278, of which N.C.G.S. 163-278.13B is a part, contains a severability clause. . . . Accordingly, this Court has the authority to and orders the severance of the invalid language as set forth above from N.C.G.S. 163-278.13B(a)(2).

e. That having severed the invalid language from N.C.G.S. 163-278.13B(a)(2), that section of the statute now reads: N.C.G.S.

163-278.13B(a)(2). **(2) "Limited contributee" means a member of or candidate for the Council of State, a member of or candidate for the General Assembly.**

[f.] That N.C.G.S. 163-278.13B, as it now reads, is valid and enforceable **in its entirety** and a lawful and valid limitation on political free speech, not in conflict with or violation of the First and Fourteenth Amendments to the United States Constitution.

Defendants set forth two assignments of error: (1) the trial court erred in declaring a part of N.C. Gen. Stat. § 163-278.13B(a)(2) unconstitutional when the issue was not raised by the parties, and (2) the trial court erred in granting partial summary judgment to plaintiff on the ground that the statute was unconstitutional as applied to independent political committees of candidates. Plaintiff cross-assigns as error the trial court's award of partial summary judgment to defendants since defendants have failed to demonstrate that this statute serves a compelling governmental interest as applied to the plaintiff.

[1] We first address defendants' contention that the trial court erred in concluding that part of N.C. Gen. Stat. § 163-278.13B(a)(2) was unconstitutional when the issue had not been raised in the trial court. Defendants argue that plaintiff, at the hearing, only raised the constitutionality of the statute as it applied to challengers and to political committees desiring to contribute to challengers. Thus, the trial court addressed an issue not before it.

Plaintiff counters by pointing out that he alleged in his complaint that the statute was unconstitutional because it was "not narrowly tailored to serve any substantial state interest" and was "impermissibly over broad." He further contended that he was "deprived of contributions to his campaign" because of the threat of enforcement of this statute and therefore requested relief from its provisions. Since plaintiff, in this action, was seeking a means to obtain contributions from lobbyists and their political committees during the legislative session, we conclude the issue was properly before the trial court and it did not err in addressing the scope of the definition of "limited contributee" as it pertains to plaintiff as a challenger.

[2] We next address defendants' argument that the trial court erred in finding N.C. Gen. Stat. § 163-278.13B(a)(2) to be unconstitutional as applied to independent political committees accepting contributions on behalf of candidates. Defendants contend it would not be appro-

priate to compare an independent political committee for a legislative candidate with that of a committee established for a judicial candidate, as the trial court did. Further, defendants argue that a legislative candidate would be closely allied with his or her political committee, thus preventing it from being independent.

Restrictions on campaign finance which burden expressive activity under the First Amendment must be narrowly tailored to serve a compelling governmental interest. *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 657, 108 L. Ed. 2d 652, 662 (1990), *citing Buckley v. Valeo*, 424 U.S. 1, 46 L. Ed. 2d 659 (1976). The United States Supreme Court in *Austin* applied the strict scrutiny analysis and recognized that the prevention of corruption and the appearance of corruption were "legitimate and compelling" governmental interests for restricting campaign finance. *Austin*, 494 U.S. at 658, 108 L. Ed. 2d at 664. However, because political free speech under the First Amendment has such a high status, "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Buckley*, 424 U.S at 15, 46 L. Ed. 2d at 685. Thus, when the government restricts political contributions and expenditures, it must employ means narrowly drawn to serve its compelling governmental interest. *Id.* at 25, 46 L. Ed. 2d at 691.

N.C. Gen. Stat. § 163-278.13B prohibits, while the General Assembly is in session, incumbents from soliciting or accepting contributions from lobbyists and prohibits lobbyists from making contributions to incumbents. The statute also prohibits lobbyists or their related political committees from indirectly threatening incumbents, while the General Assembly is in session, with contributions to challengers. Thus, the trial court properly concluded that N.C. Gen. Stat. § 163-278.13B was enacted for a compelling governmental interest, i.e. the prevention of corruption or the appearance of corruption among both incumbents and challengers while the General Assembly is in session.

However, the trial court found that the remedy set forth in N.C. Gen. Stat. § 163-278.13B was not narrowly tailored to serve a compelling governmental interest. The statute prohibits "limited contributees" from soliciting or accepting contributions from "limited contributors." The definition of "limited contributee" in the statute includes "a political committee the purpose of which is to assist a member or members of or candidate or candidates for the . . . General

Assembly." Thus, the statute prohibits political committees for the candidates, in addition to the candidates themselves, from soliciting or accepting contributions from lobbyists. The trial court was correct in concluding that this prohibition on political committees, however, was not narrowly drawn to serve the compelling governmental interest of preventing corruption or the appearance of corruption while the General Assembly is in session and therefore constituted an impermissible restriction on political free speech. Thus, the trial court did not err in severing "political committee" from the definition of "limited contributee."

[3] Plaintiff cross-assigns as error the trial court's finding that N.C. Gen. Stat. § 163-278.13B was constitutional as applied to him as a challenger. Plaintiff contends that the statute is not narrowly tailored because it prohibits contributions to challengers who have no influence to peddle.

The trial court observed that the rationale for changing the law to include challengers was to prevent lobbyists and their political committees from using the "threat" of contribution to a challenger as pressure to cause an incumbent to vote on an issue which the lobbyist or the related political committee opposed or championed and to eliminate that outside influence from being asserted against the incumbent. The trial court did not err in concluding that a compelling governmental interest was addressed in amending the statute to include challengers. Therefore, the statute is narrowly tailored in its application to challengers, as well as incumbents.

Further, the United States Supreme Court held that "absent record evidence of invidious discrimination against challengers as a class, a court should generally be hesitant to invalidate legislation which imposes evenhanded restrictions on its face." *Buckley*, 424 U.S. at 31, 46 L. Ed. 2d at 695. Plaintiff has made no showing in this record that the statute invidiously discriminates against him as a challenger; therefore, his cross-assignment of error is overruled.

Affirmed.

Judges LEWIS and WYNN concur.